# Johnson *versus* The West Chester and Philadelphia Railroad Company.

| 70 | 357 |
| 129 | 120 |
| 130 | 394 |
| 70 | 357 |
| 151 | 564 |
| 70 | 357 |
| 164 | 197 |
| 70 | 357 |
| 19 SC | 176 |
| 70 | 357 |
| 204 | ¹476 |
| 70 | 357 |
| e²10 | ¹265 |

1. By arrangement tickets were sold by two railroad companies to pass over each other's road. The train of each from different points arrived at and left a station at the same time on different sides of the same platform. A passenger in one train having such ticket, arrived just as the other train was departing, passed over the platform, and stepped on the car of the other train; by its movement he was thrown off and injured. The court charged, " If the train was distinctly running on the track when the plaintiff attempted to enter; he was guilty of negligence and cannot recover." *Held*, to be error; it was for the jury to say whether the danger of boarding the train when in motion was so apparent as to make it the duty of the passenger to desist from the attempt.

2. The companies having an arrangement for through tickets, it was bind-

ing on both companies, and it was their duty to give a reasonable time for the transfer of passengers and their baggage.

3. The conductor of the arriving train signalled the departing train that there were no passengers for it. The passenger was not responsible for the mistake; reasonable time should be allowed to ascertain whether there were passengers.

4. The company having wronged the passenger by the premature moving of the train; in ascertaining whether he was negligent, he was not required to exercise the self-possession and coolness in determining the danger as a by-stander or passenger *in* the car would have.

5. Duties of companies of connecting railroads stated.

January 15th 1872. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Chester county:* No. 176, to January Term 1872.

This was an action on the case brought October 1st 1869, by John C. Johnson against The West Chester and Philadelphia Railroad Company, for negligence, by which the plaintiff was thrown from the car of the defendants and lost his arm.

The Philadelphia and Baltimore Central Railroad and the defendants had a common platform and station-house at a point called "Baltimore Junction," the Baltimore railroad being on the south-west side of the platform, and the defendants' road being on the north-east side; the two roads were almost united at the east end of the platform, and then diverged south and north, so that the distance across the platform at about the middle of its length was 46 feet.

The Baltimore Central Road connected also with the Philadelphia, Wilmington and Baltimore Railroad at Lamokin, about eight or nine miles from the Baltimore Junction. By arrangement between the companies, tickets are sold from Wilmington around by Lamokin and over the Baltimore Central Railroad, and the defendants' railroad to West Chester.

The trains on the Baltimore Central Railroad, according to their schedules, left Philadelphia at 4.30 o'clock P. M., Lamokin 5 o'clock P. M., and Baltimore Junction at 5.27 o'clock P. M. On the defendants' road the trains left for West Chester from Philadelphia at 4.35 o'clock, from Baltimore Junction at 5.27 o'clock P. M. By their advertisements, the defendants announced that they connected with the Baltimore Central Railroad at Baltimore Junction by trains, leaving Philadelphia at 7.40 o'clock A. M. and 6.45 o'clock P. M.

On the 27th of May 1869, the plaintiff bought a ticket at Wilmington for West Chester; he came upon the Philadelphia; Wilmington and Baltimore Railroad to Lamokin, there took the train on the Baltimore Central Railroad to Baltimore Junction; he got out there to take the defendants' train to West Chester; their train was there when he arrived; he crossed the platform to

[Johnson v. West Chester & Philadelphia Railroad Co.]

the last car of the train, whilst he was getting on, just as the train started, he fell, the wheels of the car passed over his arm and crushed it, so that it was necessary to amputate it.

The evidence of the plaintiff was, that the defendants' train was there first, and that the Baltimore Central train came immediately afterwards; that plaintiff got off of that train as soon as it stopped; he had a small valise, a small coil of rope of about two pounds weight and a suit of clothes; he "walked across the platform pretty fast, between a walk and a run," he supposed the train was not in motion when he attempted to get on it.

The Baltimore Central train arrived at the junction at 5.28 P. M.; the time allowed for plaintiff to get on was very short; the conductor on Baltimore Central train knew that the plaintiff was on his train for West Chester; he gave no signal to the defendants' train that he had no passengers; the West Chester train started as soon as the Baltimore Central reached the station.

James Wilcox, for the defendants, testified that when the plaintiff ran across the platform the West Chester train was distinctly in motion, running about three miles an hour; the train did not wait more than a minute after the Baltimore Central train came up.

William McCullough testified that he saw plaintiff running across the platform, the train was then distinctly in motion; the conductor of the West Chester train called to hold up; he then heard that there was a man under the car. "It took about five seconds for all this to happen."

The conductor of the West Chester train testified that the conductor of the other train "beckoned to him to go-ahead. We started. I ran forty or fifty feet to get on our train. I saw a man within eight feet of our train. Told him not to get on. A young man was standing between him and me. Johnson caught hold of the railing and it turned him round; went down on his left side; held on when he went down; made three or four steps backwards, and his hold was broken. After we passed I saw him under the stationary platform; he walked up the steps. I asked him where he came from; he said from the other train. He pulled out a ticket and handed it to me. Our car was about moving when the Baltimore came up. I got on our train after it started. When Johnson got on our cars we were going at the rate of three or four miles an hour. I hallooed to him to hold up. He was coming a fast run. I knew he could not get on; had a valise in his hand. We did not stop there for the Baltimore train.    *    *    * We always stopped at the Baltimore Junction and took on passengers if they were there. Length of stopping is according to circumstances. Time is allowed for passengers to get off and on. Time varies from half a minute to a minute and a half. The

other train pushed on directly after ours. We generally get passengers there. The train went after he seized the railing, six or seven feet. The Baltimore conductor signalled me he had no passengers. If he had, I would have stopped our train. We are at liberty to wait for passengers there. I got on our train after it started. Johnson followed me in about three seconds after I got on." * * *

A number of witnesses testified that the West Chester train was perceptibly in motion when the plaintiff attempted to get on.

The plaintiff's points were:—

1. Railway corporations, acting as carriers of passengers, are bound to use all the diligence necessary to transport those passengers in safety; and where it happens that a passenger is injured, the burden of proof lies on the corporation to show that such diligence has been used.

4. When John T. Johnson, on the 27th of May 1869, arrived at the Baltimore Central station, on the West Chester Railroad, he had a right to suppose and believe that the West Chester train was in waiting to receive him, and also, to act in that supposition and belief till distinctly admonished to the contrary; and if the West Chester train started without such admonition being given so as to be clearly indicated to him, under the circumstances which surrounded him, by some act or word on the part of those having control of the train, the defendant is responsible for whatever injury happened to him for want of such admonition.

5. Even if the jury believe that the train was in motion, if it was not apparent that it was distinctly under way, but might reasonably be supposed by one in the plaintiff's circumstances to be only preparing to get under way, then it was not negligence in the plaintiff to endeavor to get on board the car.

6. Whether there was negligence or not, on either side, is a question solely for the jury.

The answers were:—

" 1. This may be true where the injury occurs while the passenger is within the car. But the principle is inapplicable here, inasmuch as the plaintiff was injured while attempting to get upon the train.

" 4. This is true; but if the train was running away from the station, and could be perceived by the plaintiff to be *doing* so when he came up, this was a sufficient admonition, and could not be disregarded. If the train could be so perceived to be running, it was the plaintiff's duty to observe it.

" 5 & 6. These are fully answered in the general charge."

The court (Butler, P. J.) charged:—

" The plaintiff claims to recover compensation for an injury which he says resulted from the defendant's negligence.

[Johnston v. West Chester & Philadelphia Railroad Co.]

"·To entitle him to succeed it must appear, *first*, that he was injured; and *second*, that the injury resulted wholly from the defendant's negligence—not being contributed to in. any degree by negligence on his own part.

"That he was seriously injured is fully shown.

"Did this injury result from negligence in the defendant,· and from it alone ?

"To ascertain this it is proper to inquire, *first*, whether the defendant was guilty of any negligence tending to the injury. And if it was, then, *second*, whether the plaintiff was also guilty of negligence tending to the same result.

"As the Baltimore Junction was an appointed stopping-place for the train which the plaintiff endeavored to enter, it was the duty of the company defendant, to keep the train standing so long as was necessary to enable the plaintiff to enter safely, if he was then seeking to do so *at the time it started*.

"The allegation of the plaintiff is that the train started too soon. If he was present endeavoring to enter when it started, his allegation is well founded. And if such too early starting produced his injury, without being aided by negligence on his own part, he is entitled to recover.

"Then was he present seeking to enter when the train started ? This is the first question in the cause. To ascertain how it should be answered we will turn to the evidence." * * *

· The court recapitulated the evidence.

"Now, looking at the question in the light of this evidence, Was the plaintiff present, seeking to enter when the train started, or did he come up after it had gotten under way ? If the latter be the fact, the plaintiff cannot recover, and your inquiries need go no further. If, on the other hand, he was present when it started, seeking to enter, and his injury resulted from its too early. moving, he can and should recover; unless, indeed, he too was guilty of carelessness tending to the same result.

"And thus (if you think he was so at the train seeking to enter at the time it started—before it got distinctly under way), you will be brought to the second question stated.

"Was he guilty of such carelessness ? When he attempted to enter the car, his hands and arms were to some extent, encumbered. Some of the witnesses have testified that he was carrying a valise, a bundle and a coil of pipe. Yet if the train was *entirely still* when he stepped from the platform by its side, it is not suggested that there was any want of care in the attempt to enter. If, however, it was not entirely still—was in the act of starting—taking up the slack, as one of the witnesses has denominated it, but was not yet distinctly under way when he attempted to enter, then it is for you to determine whether he was or was not guilty of carelessness in making the attempt, encumbered as he was.

[Johnson *v.* West Chester & Philadelphia Railroad Co.]

What was the situation of the train at the time the plaintiff sought to enter, we have already considered in examining the first question stated. If you find it was entirely still, it is not alleged, we repeat, that the plaintiff was guilty of carelessness in attempting to enter. If you find it was not entirely still—was in the act of starting as before described, but was not clearly and distinctly under way, then you will say whether it was or was not careless to attempt to enter, encumbered as the plaintiff was.

"The defendant has asked us to instruct you that if the train was in *motion* when the plaintiff attempted to get upon it he was guilty of negligence and cannot recover. If by the term "motion" is meant *running upon the track*—distinctly running, so as to be perceptible to those alongside—the point is affirmed; otherwise it is not. There may have been some motion, incident to starting and preceding it, yet of so slight a character that the law cannot pronounce an attempt to enter at that time negligent; but must leave the jury to judge of it in the light of all the circumstances. But if the train was distinctly running upon the track when the plaintiff attempted to enter, then he was guilty of negligence and cannot recover. If his injury resulted from an attempt to enter under such circumstances it must be regarded as the direct consequence of his own folly. No one has a right to attempt to get upon a running train. To do so is to imperil his own life and the lives of others. It is therefore a plain disregard of duty. Generally what constitutes negligence in a particular case, is a question for the *jury;* because negligence is want of ordinary care. To determine whether there has been negligence in a given case therefore involves two inquiries; first, what would have been ordinary care under the circumstances; and, second, did the conduct in question come up to the standard. In most cases the standard is variable, and must be found by the jury. But where it is fixed—the measure of duty defined—entire omission to observe it, is negligence. Thus it has been held to be the duty of a railroad company to decrease the speed of its trains while passing a sharp curve; to signal their approach to the crossing of a common road; to afford time for passengers to get safely on and off at stations. And the duty of passengers to approach and leave trains by way of the platforms provided; to keep off the road except when there is occasion to cross it, and when there is such occasion to stop, look and listen for approaching trains before crossing. And that an omission of this duty is negligence.

"Now, that it is equally the duty of all persons to stand away from a train running upon the track, and that a failure to do so is negligence, cannot be doubted.

["We therefore charge you that if the train was distinctly running upon the road when the plaintiff attempted to enter it he cannot recover.]

[Johnson *v.* West Chester & Philadelphia Railroad Co.]

["It is possible the train should have awaited the plaintiff's arrival from the Baltimore road (if he was there when it started). But whether it should or not is unimportant in this action]. If the defendant failed to keep its contract with him in this respect his remedy was by an action for its breach. [He could not set his life or limbs upon the hazard of a leap at the running train and hold the defendant liable for the consequence of such folly.]

"Now in conclusion, we repeat: To entitle the plaintiff to recover you must find from the evidence that his injury resulted from negligence in the defendant, and from this *alone*—not being contributed to in any degree by want of care on his part." * * *

The verdict was for the defendants.

The plaintiff removed the case to the Supreme Court.

He there assigned the following errors :—

1–2. The answers to his 1st and 4th points.

3. Failure to answer his 5th point.

4, 5, 6. The parts of the charge in brackets.

7. In not presenting the case in its proper light to the jury, having failed to give any, or just weight, to the vitally important fact, that the trains on the two roads were connecting trains, and the defendant was, beyond dispute, guilty of negligence in moving the West Chester train before passengers arriving by the other train had time to transfer themselves from one train to the other.

*W. Mac Veagh* and *J. J. Lewis*, for plaintiffs in error.

*W. Darlington*, for defendants in error.

The opinion of the court was delivered, January 29th 1872, by

Agnew, J.—This case appears to have been carefully tried by the learned and able judge in the court below. Yet, after an attentive examination, we are led to the conclusion, that the rule of concurrent negligence was held a little too closely against the plaintiff, and the province of the jury rather trenched upon. The judge himself states the well-known rule that, "generally what constitutes negligence in a particular case, is a question for the jury:" Kay *v.* Pennsylvania R. R. Co., 15 P. F. Smith 273, 274; Pennsylvania Canal Co. *v.* Bentley, 16 P. F. Smith 30. But we think his error was in laying down as a rule of *law*, a matter which was only an element in the evidence, to wit: that if the train was distinctly running on the track, so as to be perceptible to those alongside, the plaintiff was guilty of negligence in attempting to enter upon the train, and could not recover. The following passages in the charge, perhaps most clearly denote the spirit and meaning of the instruction given to the jury:

"Yet, if the train was entirely still when he stepped from the platform by its side, it is not suggested that there was any want

[Johnson *v.* West Chester & Philadelphia Railroad Co.]

of care in the attempt to enter. If, however, it was not entirely still—was in the act of starting—taking up the slack, as one of the witnesses has denominated it, but was not yet distinctly under way, when he attempted to enter, then it is for you to determine whether he was or was not guilty of carelessness in mäking the attempt, encumbered as he was." "The defendant has asked us to instruct you, that if the train was in *motion* when the plaintiff attempted to get upon it, he was guilty of negligence, and ⌄cannot recover. If by the term "motion" is meant running upon the track—distinctly running so as to be perceptible to those alongside—the point is affirmed, otherwise it is not. There may have been some motion incident to starting, and preceding it, yet of so slight a character, that the law cannot pronounce an attempt to enter at the time negligence; but must leave it to the jury to judge of it in the light of all the circumstances. But if the train was distinctly running upon the track when the plaintiff attempted to enter, then he was guilty of negligence, and cannot recover."

It is evident, that the meaning which a jury would draw from the charge was, that if the preparation for starting was over, and the train was under way, that, no matter how slow the motion, yet if the running of the train on the track was distintly visible to a bystander, the plaintiff's time to enter was past, and his attempt to get on the train would be such culpable negligence *in law* as would bar his recovery. That such a rule may be applicable to some cases, may be true, though we do not now affirm it. But clearly we are not to leave out of view, in all cases, the conduct of the railroad company in producing the result, and the natural and probable effect that conduct has had upon the mind of the passenger in influencing his act. There cannot be an inexorable rule so unbending that no circumstances begotten by the railroad company itself, shall not change it. Even when a train is distinctly under way, there are cases, and this was one, where it must be left to the jury to say whether the danger of going aboard was so apparent that it would be culpable negligence in the passenger to attempt it. Here the West Chester Railroad Company had a running arrangement with the Philadelphia and Baltimore Central Railroad Company, by which their trains met at the Baltimore Junction, and passengers were received from each on through-tickets. The plaintiff's ticket is not questioned. Under such an arrangement, it is the duty of each company to give a reasonable time for the transfer of passengers and their baggage. In this instance, it appears that the West Chester train began to move almost as soon as the Baltimore train stopped. It seems that the conductor of the latter signalled the conductor of the former, that he had no passengers for the West Chester train. But the plaintiff, who had a through-ticket, was not responsible for this mistake. Reasonable time should be allowed to develop the fact

whether there are passengers. A through-ticket, issued under such an arrangement, is binding on both roads. The plaintiff, it seems, hastened across the platform, and attempted to enter, but being encumbered with a valise, a bundle, and a coil of pipe on his arm, he missed his footing, fell to the track, and his right arm was crushed by the wheels of the car. The fact appears to be clear, that a reasonable time for the transfer was not given, and that the plaintiff, with all his effort to make haste, was unable to make the connection in consequence of this want of time. Now, though the train was distinctly in motion, so that a bystander, cool and unconcerned, could see it visibly running on the track, are we to say, as a matter of law binding on the jury, that a passenger, having a right to go on the train, and seeing himself about to be left improperly by the wayside, is guilty of culpable legal negligence, if he should essay to reach his destination, no matter how slow the motion in running might be, or how little danger was apparent to him? He may be guilty of negligence, but of this the jury should judge under the circumstances. He may not "set his life or limbs on the hazard of a leap at the running train," as the judge emphatically said, and doubtless if such were the character of his attempt, it would be negligence. The expression " leap at a running train," denotes a higher effort and less consideration on part of the traveller, than merely attempting to board a car under way. In the former, a jury might discover negligence, while in the latter, they might not, in view of the circumstances, discover any. In discussing the conduct of the passenger merely, we are not to lay out of sight the wrong of the company, *in its influence upon his mind and act*. He may have strong motives to reach his destination—indeed, no man but must feel, and feel strongly, at being left by the wayside; he is conscious of his right to go aboard, and naturally becomes excited at the sight of the moving train, perhaps is alarmed, and in some degree confused. If the train be running slowly, and the danger is not apparent to him, what so natural as that he should hurry to reach the train, and to get aboard?

But if we lay down the inexorable rule for this and every other case, that whenever the train can be seen to be distinctly running, it is legal negligence to attempt to get on, we set a premium on the wrong of the company, which influenced the very act itself. To say that whenever the motion of the train is so distinct that bystanders can distinctly see it under way, and running along the track, the passenger is to be as cool and unconcerned as they, fold his arms, and say to himself, I'll sue you for this breach of contract in leaving me here, is to him bitterness itself. He may be a stranger, and know not where to find accommodation; the severity of the winter may surround him, or the heat of summer oppress him; the elements may war against him, and night or

[Johnson *v.* West Chester & Philadelphia Railroad Co.]

approaching darkness may heighten his alarm. Or, if no stranger, his business may be urgent; his family may require his presence; his health may be poor; his means limited; his desire to reach his destination overpowering, and a hundred reasons may influence him to go on. Now, are we to say that the wrong which has caused his mind to be excited and aroused his fears, which confuses him, and has made him less cool and calculating than those who are standing by, and can look upon the departing train without emotion, is not to be taken into the account in considering his act? What caused his state of mind? Not his own carelessness or breach of duty as a passenger, but the illegal and wrongful act of the carriers. Surely it does not lie in the mouth of the railroad company to say to him, the law will take no account of our breach of duty in its effect upon you. You ought not to have suffered it to move you, but if you saw our train was moving along the track, the slack taken up, the train stretched out, and the cars under way, so that any one else could distinctly see it running, you ought to have looked upon our leaving you on the wayside with perfect coolness; made no effort to go, and sued us for our breach of the contract of carriage. No matter how slow the motion of the train was, nor how little danger in getting on was apparent to you, or what the state of your mind caused by our wrongful act, it is not a question for a jury under the circumstances, but the law holds you guilty of culpable negligence in the attempt to board the train, and we are allowed to go free. This is too stringent a rule for the case. Culpable negligence is the omission to do something which a reasonable, prudent and honest man would do, or the doing of something which such a man would not do, under all the circumstances surrounding the particular case: Shearman & Redfield on Negligence, § 7; Kay *v.* Penna. Railroad Co., 15 P. F. Smith 273. Instead, therefore, of the rule laid down by the learned judge, he should have left it to the jury to say, under all the circumstances in evidence, whether the danger of boarding the train, when in motion, was so apparent as to have made it the duty of the plaintiff to desist from the attempt. There is no objection to the court's assisting the jury in the performance of their duty, by reminding them of the danger of boarding a train in motion, and the caution and care that passengers should use, as well as of the duties of the carriers, and the influence of their wrongful acts in producing the catastrophe. But railroad companies are bound to remember that they owe duties to the public, for whose benefit their charters have been granted, and therefore should not be lightly loosed from the effects of their own wrongful acts. We are of opinion the court should have left the question of negligence on the part of the plaintiff to be determined by the jury upon the circumstances, and under an instruction less stringent and binding as to the duty of the plaintiff.

Judgment reversed, and a *venire facias de novo* awarded.