## CATHERINE GUNN v. UNITED RAILWAYS COMPANY, Appellant.

### Division Two, March 30, 1917.

1. **NEGLIGENCE:** Boarding Moving Car: Contributory Negligence Per Se. There is no cause of action against the carrier in favor of one who is injured as a result of his attempt to board a moving car if the carrier is guilty of no act of negligence beyond the mere fact that the car is moving at the time. In such case the person who attempts to board a car while it is in motion assumes the risk of injury from the ordinary movements of the car, but is not chargeable with negligence *per se.*

2. ——: ——: After Slowing Down: Premature Start: Mental Excitement. If a person, desiring to board a street car which merely slows down without stopping at the proper place or starts prematurely after having stopped, is laboring under great mental excitement, caused by facts which make it especially desirable and necessary to board the car at that place and such excitement is great enough to deprive him of the power to safely judge the dangers of the situation, and if the agents of the carrier know or under the circumstances are bound to be aware of such conditions of excitement, the carrier's failure to stop the car or to hold it a reasonable length of time is negligence, and the risk of injury from boarding the moving car is not assumed by such person; but if he is not laboring under such excitement, and is not directed by the carrier's agent to enter, he cannot recover for injuries caused by ordinary movements of the car.

3. ———: ———: **When Plaintiff May Recover.** A person seeking to recover damages for injuries received while boarding or leaving a moving street car, must show that the carrier caused him to be put in a dilemma, such as to cause excitement of mind rendering him for the moment unable to properly choose between two courses of action, or that the carrier's agents made some order, request or direction that he board or leave the car, or that there was some sudden shock or acceleration of speed of the car while he was getting on or off; or some defect in the car which increased the danger, or some other facts showing negligence of the carrier other than the mere fact that the car was in motion when he made the attempt to board or leave it.

4. ———: ———: ———: **No Contributory Negligence.** A person not under unusual excitement who attempts without invitation to board a moving street car after it has started in ordinary movement, cannot recover for injuries so received, regardless of the question of whether he was himself guilty of negligence, even though the car after having been stopped was started without giving him reasonable time to board it.

5. ———: ———: **Act of Entering: When a Passenger: Instruction.** One who has hold of the rail or has a foot on the step for the purpose of entering is in the act of entering the car. Nor is it the law that in all cases a person must have hold of the rail or have a foot on the step in order to be in the act of entering. If he intends to take passage on a street car and has hailed it for that purpose, and it has been stopped to enable him to enter, he is to be regarded as a passenger while he is in the act of carefully and prudently attempting to step upon the platform. So the carrier is not entitled to an instruction telling the jury that if when plaintiff took hold of the hand rail the car was moving, he cannot recover.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

REVERSED AND REMANDED.

*Boyle & Priest, R. E. Blodgett* and *Elmer C. Adkins* for appellant.

*Vincent McShane, John J. O'Brien* and *John M. Goodwin* for respondent.

ROY, C.—Plaintiff recovered judgment for $3500 as damages for personal injuries. The defendant appealed to the St. Louis Court of Appeals where the judgment was affirmed. REYNOLDS, P. J., filed a dis-

senting opinion in which he held that the majority opinion was contrary to the decision of this court in Peck v. St. Louis Transit Company, 178 Mo. 617, and the appeal was accordingly certified to this court. The opinions filed in the St. Louis Court of Appeals are reported in 177 Mo. App. 512, and in 160 S. W. 540.

The petition charges the defendant's negligence and the infliction of injuries thus:

"That on or about May 16, 1910, the plaintiff signaled the motorman in charge of one of defendant's cars, running north on Seventh Street, to stop said car at the north side of Morgan Street, where said Morgan Street intersects with Seventh Street, for the purpose of enabling her to board said car and become a passenger thereon, and that said motorman did stop said car at said point. That while said car was so stopped, plaintiff, with due care and caution on her part, started to get on the same, and that while the plaintiff was so engaged, defendant through its agents and servants did, before plaintiff had a reasonable time in which to get safely on said car, negligently and carelessly start said car, thereby hurling and throwing plaintiff backwards, with great force and violence, and dragging her, causing the injuries herein complained of.

"And for further allegation of negligence, plaintiff says that defendant, through its agents and servants, negligently and carelessly failed to allow plaintiff a reasonable time to get safely on said car, before starting it, and said defendant through its agents and servants, negligently and recklessly started said car, while plaintiff was with due care and caution on her part in the act of getting on same, thereby violently throwing her backward and dragging her, causing the injures hereinafter set out."

The answer contains a general denial, and the following:

"Further answering, this defendant says that whatever injuries, if any, plaintiff may have sustained were caused by her own carelessness and negligence."

The reply is a general denial.

The plaintiff testified that she lived with her husband and five children; that on the day of the injury she was within two months of her confinement; that she had been shopping and was going home a quarter after one o'clock with her purchases in a basket; that the car stopped in response to her signal; that she had hold of the rail with her left hand, and had her right foot on the step, when the car started before she could get aboard; that she was dragged, and that some men held her on the car. · She testified to serious injuries which she received, and which need not be here stated.

John C. Heman, a witness for plaintiff, testified:

"Q. You were on that car? A. Yes, sir.

"Q. Just tell the court and jury what you saw, Mr. Heman? A. Why, I was standing on the back platform leaning up against the back end of the car, and the conductor was up in the front end of the car, and this car started off with a rush, and this lady, she was just about to step on the car, but the car had started, and she held it and run along with the car, and with that somebody pulled the signal rope and stopped the car. The car run probably about twenty feet, and she kind of fell back in on the step of the car, and there was another gentleman standing beside of me jumped over and reached with his arm and caught her before she fell. With that the car stopped and she straightened up and walked over to the sidewalk and stood there.

"Q. During the time this car started forward with a rush one of her feet was on the ground? A. I think that both of her feet was on the ground and she was run along with the car, that is the best of my recollection.

"Cross Examination.

"Q. You say you were on the back platform? A. Yes, sir.

"Q. You saw this woman when she came to walk out and take this car? A. Yes, sir.

"Q. When she got hold of the upright rod the car was already in motion? A. I think the car was in motion, I am almost positive it was in motion, when she grabbed for it, she had a bundle, she swung around the rail, and she stepped back just before the car stopped, a gentleman grabbed her and helped her on.

"Q. The car stopped within fifteen or twenty feet, and after that she walked over to the sidewalk? A. Yes, sir.

"Q. Was she dragged? A. No, she was not.

"By Mr. Goodwin:

"Q. Did the car stop at the corner to take on passengers? A. Yes, sir.

"Q. While it stopped there she came up and started to get on? A. Yes, sir.

"By the court:

"Q. Had any other passenger got on the car there? A. No, I think she was the only passenger.

"Q. And the car stopped there? A. The car stopped, yes, and it started off with a sudden jerk, just about the time she reached for the rail, but she grabbed it, held on to it, and the car started off with a rush, and probably went some fifteen or twenty feet and the conductor was inside and somebody pulled the bell cord and it stopped very sudden." Paul Werner was on the car at the time. He testified for the defendant thus:

"Q. Where were you standing on that car? A. On the rear end of the rear platform.

"Q. Will you state just what happened there? A. The car down at Seventh and Morgan, if I am not mistaken, the car came to a stop, there was a lady, she was on the sidewalk, and the car came to, she was already stopped, and I don't know exactly if there was anybody got off or on, but the car, I seen her coming over to the car, but then I heard the bell

going, I thought the way she. tried to go on the car, of course she couldn't go nowhere else, I thought by her expression, I thought she was coming to the car, I thought something would happen, I reached over with my hand, at that time the car already commenced to start, then she tried to put her foot on, I seen she couldn't hold herself on account she had so many bundles, I reached over and held her, the car stopped right there, if it was 20 or 50 or 100 feet I don't know.

"Q. Was this car in motion or stopped when she caught hold of the car? A. She was in motion.

"Q. The car was in motion, A. Yes, sir.

"Q. She didn't fall? A. No, she didn't fall, she could not fall, I held her."

On cross-examination the following occurred:

"Q. She was, in your judgment, at the time you first saw her, closer to the edge of the sidewalk than she was to the car? A. Yes, sir.

"Q. And she walked up and the car started out and she ran and grabbed the car while it was moving, is that it? A. She was pretty close to the car, the bell had already rung, but he did'nt start right off when I heard the bell ring, when I seen her she had a little quicker march on her than when she came towards the car, and I thought right away something would happen, the car had already moved and then she grabbed and I grabbed her with my arm and she could'nt fall then.

"Q. The reason she couldn't fall was she had one foot on the running board, on the first step, when you grabbed hold of her? A. No, she grabbed to step on and at the same minute she stepped on I grabbed her.

"Q. Then as she put her foot on the lower step you grabbed her? A. I grabbed her.

"By Mr. Goodwin:

"Q. Now, when you saw her reach for the car you knew a bell had been given and that there would likely be danger? A. Yes, sir.

"By the Court:

"Q. Did you say anything? A. No, sir; I never spoke to her.

"Q. Didn't speak to her at all? A. Except to holler to her to look out, when she came, when I seen her grab for the rail.

"Q. Then you did holler to her? A. Yes, sir; yes, sir; and at the same time I grabbed her, she had bundles in her arms and she couldn't—

"Q. You yelled " Look out" after she had hold of the car? A. Yes, sir.

"Q. You yelled " Look out" after she had hold of the car? A. No, no, when she tried to reach for it, I seen her reaching for it, but the car just started, and then the car went, and then she must have stepped on with one foot, I lifted her right clean up, I knew she would have fallen if I did not hold her.

"Q. How far did the car run? A. I don't know, maybe twenty, maybe thirty, maybe forty feet.

"Q. Maybe thirty feet? A. Yes, sir.

"Q. Was she dragged, was her other foot on the ground? A. No, she couldn't be dragging, because I was holding her, it was impossible, I would have been dragging too."

No instructions were asked by plaintiff and no fault is found with those given by the court of its own motion. The court refused Instruction No. 5 asked by defendant, but gave it with modifications. That instruction, with the modifications shown in italics, reads thus:

"The court instructs the jury that if you find and believe from the evidence that the plaintiff attempted to board a car while said car was in motion, *and that such act of plaintiff was negligence, and that the same contributed to her injury,* then she cannot recover and your verdict must be for the defendant."

Defendant's Instruction No. 1 was refused. It reads:

"The court instructs the jury that if you find and believe from the evidence that at the time the plaintiff took hold of the rail of the car, said car was moving, then plaintiff cannot recover and your verdict must be for the defendant."

I. There is a consensus of opinion of the courts of the country in support of the general rule that there is no cause of action against the carrier in favor of one who is injured as a result of his boarding or leaving a moving car where no act of negligence of the carrier is shown beyond the mere fact that the car was so moving at the time. Some of the courts hold that such an act is negligence *per se,* while others hold that though getting on or off a slowly moving car is not negligence *per se,* yet the passenger assumes all risk in so doing. They all agree that there can be no recovery. We cite Haldan v. Great Western Ry. Co., 30 U. C. C. P. (Canada) 89; Browne v. Railroad, 108 N. C. 34; Hunter v. Railroad, 126 N. Y. 18; Tobin v. Railroad, 211 Pa. St. 457; Damont v. Railroad, 9 La. Ann. 441; Gavett v. Railroad, 82 Mass. 501; Lauterer v. Manhattan Ry. Co., 63 C. C. A. 38; Murphy v. Railroad, 71 N. J. L. 5; Ricks v. Railway Co., 118 Ga. 259; Denver, S. P. & P. R. R. Co. v. Pickard, 8 Colo. 163; Weber v. Railroad, 104 La. 367; Kelly v. Railroad, 70 Mo. l. c. 609; Schepers v. Railroad, 126 Mo. l. c. 676.

*Boarding Moving Car.*

1 Nellis on Street Railways (2 Ed.), sec. 301, says:

"It is not sufficient proof of the carrier's negligence merely to show that one attempting to board a street railroad car while barely moving as it reached the street crossing was thrown to the ground and injured. If, however, the car was started with a sudden jerk while the passenger was in the act of boarding, such added circumstances would be sufficient to take the case to the jury."

Booth on Street Railways, sec. 336, says:

"Although the act of boarding a car while in motion is always attended with some risks, the rules applicable to persons entering cars operated by steam are not usually applied with the same strictness to street railways. It is the general rule, established by numerous decisions, that if a person, who has the free use of his faculties and limbs, has given proper notice of his desire to be taken on, and the speed of the car has been slackened in the usual manner, it is not negligence *per se* to attempt to get on while it is moving slowly, and that if a passenger is injured under such circumstances the question of his contributory negligence is ordinarily one of fact for the jury. So when a car has been derailed and passengers, who have alighted, attempt to board while it is starting slowly, and are thrown off by a sudden jerk, or where the driver fails to stop for a boy who hails him, but tells him to jump on, and in attempting to do so the boy falls and is injured. But one who attempts to board a car while it is in motion does so at his own risk as to all ordinary movements of the car; and as to the presence of dangerous obstacles near the track."

This court in Schepers v. Union Depot Railroad Co., 126 Mo. 665, cited the last above mentioned authority, and said: "The person making the attempt could only be held to assume the risk of injury from the ordinary movements of the car."

In Neville v. Railway Co., 158 Mo. 293, l. c. 316, it was said, "he would take the risk of alighting if the train was in motion."

II. The question arises as to what are the rights of the person desiring to get on or off the car if such car merely slows down without stopping at the proper place, or starts prematurely after having stopped.

If such person is laboring under some great and unusual mental excitement caused by facts which make it especially desirable or necessary to board or leave such car at that time and place, and such excitement is great enough to deprive such person of the power to safely judge the dangers of the situation, and if the agents of the carrier know, or, under the circumstances are bound to be aware of such condition of excitement, then the failure of the carrier to stop the car or to hold it a reasonable length of time is negligence, and the risk is not assumed by the person who may be injured. The first case in this court involving this general subject is Loyd v. Railroad, 53 Mo. 509, where it was said:

*Boarding Moving Car: Mental Excitement.*

"Whilst it may be the law, that a passenger, who jumps from a train when in motion, takes the risk of injury to life or limb, it does not follow that the plaintiff in this case could be expected, whilst standing on the steps of the car, and after her child three years old had been lifted out, to have the presence of mind to deliberate on the propriety of following her child although the train immediately commenced to move, nor had she time to reflect on the danger of a straightforward movement at right angles to the train, instead of inclining in the direction the train was moving.

"The fact appears in evidence, that the train was behind time and that it did not stop a minute. All the witnesses compute the time by seconds."

In Solomon v. Manhattan Ry. Co., 103 N. Y. 437, it was said:

"It is, we think, the general rule of law, established by the decisions in this and other states, as claimed by the learned counsel for the respondent, that the boarding or alighting from a moving train is presumably and generally a negligent act *per se*, and that in order to rebut this presumption and justify a recovery for an injury sustained in getting on or

off a moving train, it must appear that the passenger was, by the act of the defendant, put to an election between alternative dangers, or that something was done or said, or that some direction was given to the passenger by those in charge of the train, or some situation created, which interfered to some extent with his free agency, and was calculated to divert his attention from the danger, and create a confidence that the attempt could be made in safety."

It was there also said:

"In boarding a moving train there is generally less excuse than in alighting from one. The party attempting it is not often under the same stress of circumstances as frequently happens in the former case. He may be compelled to wait for another train, but this is an inconvenience merely, which does not justify exposing himself to hazard."

It will be noticed that the courts of New York proceed on the theory that getting on or off a moving car is negligence *per se,* which is contrary to the rule followed by this court; yet we say that the person so doing assumes the risk of the ordinary movements of the car. In both cases an exception is made in favor of the person who is under temporary excitement as above mentioned. [See also Newmark v. Railroad, 111 N. Y. Supp. 379; Johnson v. Railroad, 70 Pa. 357; Gavett v. Railroad, 82 Mass. 501, l. c. 507; Cousins v. Railroad, 96 Mich. 386.]

III.  Sometimes the order, direction or request of persons in charge of the car for persons to enter or leave the car will absolve such persons from the charge of negligence or assumption of risk. [3 Michie on Carriers, sec. 2821; Newmark v. Railroad, 111 N. Y. Supp. 379; Railroad v. Gore, 96 Ill. App. 553; Pence v. Wabash Ry. Co., 116 Iowa, 279; Wyatt v. Railway Co., 62 Mo. 408; Kelly v. Railroad, 70 Mo. 604; Fulks v. Railroad, 111 Mo. 335.]

*Direction to Board Moving Car.*

IV. When a car fails to stop, or, having done so, starts prematurely, a person desiring to board or leave the car may refrain from doing so and sue for damages for the inconvenience and loss thus suffered; but if he chooses to get on or off such moving car, and is not laboring under such excitement as above mentioned, and is not directed by the carrier's agent to so act, he cannot recover for injuries which he may receive caused by the ordinary movement of the car. [Railroad v. Aspell, 23 Pa. St. 147; Ginnon v. Railroad, 3 Rob. (N. Y. Superior) 25; Kelly v. Railroad, 70 Mo. 604.] In South Chicago City Ry. Co. v. Dufresne, 200 Ill. 456, it was said:

*Boarding Moving Car Without Direction or Laboring Under Excitement.*

"There were three counts in the declaration. The supposed negligence alleged in the first count was, that the defendant did not stop the car after the plaintiff had given notice of his intention to take passage, in consequence of which, while he was attempting to take passage, he was thrown to the ground. The second count alleged that defendant brought the car to a partial stop to allow plaintiff to take passage, and while he was attempting to secure a seat on the car increased the speed of the car with a sudden start or jerk, throwing him off. The third count alleged that the defendant stopped the car, and while plaintiff was attempting to secure a seat started it in a violent and sudden manner, by which he was thrown down. The first count did not state a cause of action for plaintiff's injury. If a refusal to stop cars on notice would give rise to a cause of action, it would necessarily be for damages resulting from the refusal to stop, which might consist of delay or loss of time, but the refusal to stop and accept him as a passenger would not be the proximate cause of the injury alleged."

That is the only case we have been able to find in which counsel for plaintiff ventured to state his case as in the first count of that petition. The ruling of the

court that such count did not state a cause of action was in accordance with the general rule of non-liability stated in the beginning of this opinion.

We make bold to assert, after a rather diligent search of the authorities, that we have found no case denying that general rule, though we have found cases where it was involved but overlooked. It necessarily follows that a person seeking to recover damages for injuries received while boarding or leaving a moving car, must show that the defendant caused the plaintiff to be put in a dilemma, such as to cause excitement of mind rendering him for the moment unable to properly choose between two courses of action, or there must be some order, request or direction by defendant's agents that the person shall board or leave the car, or some sudden shock or acceleration of the speed of the car while the person is getting off or on, or some defect in the car, or some other facts showing negligence of the defendant other than the mere fact that the car was in motion when the attempt was made.

If the petition in this case had merely alleged that the car stopped in response to plaintiff's signal, that it was then negligently started by defendant before plaintiff had reasonable time to get on it, and that plaintiff after it had started, attempted to get aboard the moving car and was injured by reason of the fact that the car was so moving, it would fail to state a cause of action. The general rule above stated would make it bad on demurrer. It is true that in such case there would be no presumption of negligence *per se* on the part of plaintiff, but it is also true that plaintiff must be held to have assumed the risk of danger in such a case. The mere absence of contributory negligence on plaintiff's part will not supply the lack of evidence of liability on the part of the defendant.

It will be noticed that, for the purposes of this case, we make no difference between an injury received in getting off a car and one received in getting on it.

Such being the case, the petition in Ridenhour v. Railway Co., 102 Mo. 270, was exactly like this. It charged that the injury was caused by putting in motion a car which was "stopped." So does the petition now in hand. But the similarity of the two cases ends with the pleadings. The evidence in the former case is radically different from what it is here. It showed in that case that the injury occurred from the sudden jerk or acceleration of the speed of a slowly moving car from which the plaintiff was alighting as it was moving. While the opinion in that case does not state it in so many words the plain meaning of it is, that if the motion of the slowly moving car from which the plaintiff was alighting was suddenly accelerated, thereby causing the injury, the variance between the allegation that the car was stopped and the proof that it was slowly moving was not a fatal variance. The "jerk" of the car caused the injury regardless of whether the car was stopped or slowly moving at the time the jerk occurred. But it is not so here. The evidence of plaintiff supported the charge of the petition that the car was stopped, and that as she was boarding it it was started again without giving her time to get on safely. That evidence was properly submitted to the jury. But that was all the evidence there is of any actionable negligence on the part of defendant. There is no evidence that the car started and while plaintiff was boarding it as it moved there was a sudden jerk or acceleration of speed. There is no evidence that plaintiff was laboring under unusual excitement as above mentioned, nor that she was directed by defendant's agents to board the moving car, nor that there was any defect in the car. Though the defendant may have negligently started the car without giving plaintiff reasonable time to board it, if such starting was before plaintiff was in the act of attempting to get on the car without giving plaintiff reasonable time to board it, she, by

attempting to get on such moving car, assumed all risk from the ordinary movement of it.

It must follow from what has been said that the defendant's Instruction Number Five should have been given as asked. If she attempted to board the car after it started she can not recover, regardless of the question whether she was guilty of negligence. The mere absence of contributory negligence on her part does not give her a cause of action against the defendant in the absence of evidence showing liability on its part.

The cases of Peck v. Transit Co., 178 Mo. 617, and Northam v. United Rys. Co., 176 S. W. Rep. 227, are like this case as to the pleadings and evidence. In both those cases an instruction the same in substance as instruction 5 as asked by the defendant herein before its modification by the trial court, was approved. That instruction in both those cases simply said that if the plaintiff attempted to board (or leave, in the Peck case) the car after the car had started, the plaintiff could not recover. We will not review or discuss those cases, except to say that they were both properly decided. They overlook the general rule stated in the beginning of this opinion, but they do not oppose it and reach the same result as that required by such rules.

V. We concur in that part of the majority opinion of the Court of Appeals herein which holds that Instruction Number 1 asked by defendant was properly refused. There are many cases which Entering hold that one who has hold of the rail or has Car. a foot on the step for the purpose of entering the car is in the act of entering. But we know of no case holding that in all cases a person must have hold of the rail or have a foot on the step. Booth on Street Railways, page 530, says:

"Where a person intends to take passage on a street car and has hailed it for that purpose, and it has been stopped to enable him to enter, he is to be regarded as a passenger while he is in the act of carefully and prudently attempting to step upon the platform."

In support of the text the author there cites Smith v. St. Paul City Ry. Co., 32 Minn. 1, where an instruction was approved which said:

"If the plaintiff was not actually on the platform, but had hailed the car, and the car had stopped for the purpose of enabling him to take passage, and he was in the act of carefully and prudently attempting to step upon the platform, he is to be regarded as a passenger."

Undoubtedly the would-be passenger must be in the act of boarding or attempting to board the car as distinguished from merely approaching it for the purpose of making such attempt. Under all the facts shown in evidence the defendant was not entitled to that instruction.

The judgment is reversed and the cause is remanded for a new trial.

*White, C.,* not sitting.

PER CURIAM:—The foregoing opinion of ROY, C., is adopted as the opinion of the court. All the judges concur.