23824, 23825.   HOUSTON *v.* TAYLOR.

DECIDED FEBRUARY 21, 1935.   REHEARING DENIED MARCH 2, 1935.

*Bussey & Fulcher,* for Houston.   *Curry & Curry,* contra.

BROYLES, C. J.   F. V. Taylor, as next friend for his minor son, Ficken Taylor, and for himself individually, brought separate suits against William R. Houston, alleging, in substance, that Ficken

Taylor and another boy, Julian Dooley, were standing on a street corner in Augusta and waiting for a street-car; that Houston suddenly stopped his automobile on a down-hill slant, in the middle of the street, without any warning to the automobile drivers directly behind him, and invited the boys to ride; that Dooley ran out and got in the defendant's car, and Ficken Taylor also ran out and had one foot on the running board of the defendant's car in the act of getting in when a car driven by one Hammond came from the rear to the right of the defendant's car and caught the extended leg of Ficken Taylor between his car and the car of the defendant, resulting in described injuries to Taylor; that Hammond's act in trying to pass from the rear to the right of the defendant's car was caused by the emergency created by the defendant in so stopping; and that the "injury complained of was caused by the gross negligence of defendant in stopping his automobile suddenly, and without warning, in the middle of the street, and at a point where the hill was at its greatest slant."

The acts of negligence as specifically set forth in the amendment to the petition are as follows: " (a) By defendant suddenly stopping his automobile without any notice, signal or warning to the drivers of automobiles being driven directly behind defendant's automobile, and in violation of paragraph (e), section 8, article III of the Traffic Code of the City of Augusta for 1932, which reads as follows: 'Before a vehicle retards its speed or comes to a stop his (or her) arm shall be extended 45 degrees downward from the left side of the vehicle for a sufficient time to apprise pedestrians, approaching or following vehicles, of the intended stop.' (b) By defendant suddenly stopping his automobile in the middle of the street and where the hill was at its greatest slant, which made it difficult, and almost impossible, for the automobiles, being driven directly back of the defendant's automobile, to be quickly stopped, and in violation of section 53, article VII of the Traffic Code of the City of Augusta, 1932, which reads as follows: 'Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving.' (c) By defendant stopping his car in a roadway other than par-

allel with the edge of the roadway, and heading in the direction of traffic, and with the curb-side wheels [not] within six inches of the edge of the roadway, and in violation of section 34, article VI of the Traffic Code of the City of Augusta for 1932, which reads as follows: 'Except when necessary in obedience to traffic regulations or traffic signs or signals, the driver of a vehicle shall not stop, stand or park such vehicle in a roadway other than parallel with the edge of the roadway, heading in the direction of traffic, and with the curb-side wheels of the vehicle within six inches of the edge of the roadway.' . . (d) By creating an emergency which caused Ficken Taylor to act quickly and without time for thoughtful reasoning, [and] prevented Keene Hammond from quickly stopping his car and made it necessary for him to drive to the right of defendant's car, instead of to the left where the rules of the road required him to drive, and thereby compelled said Keene Hammond to run into Ficken Taylor and crush and break his leg."

The damages sought by the boy were for physical pain and mental anguish, and his father sought to recover for expense incurred as a result of the injury. The two cases were tried together, and a verdict and judgment were rendered for the plaintiff in each suit. In each case the defendant assigns error on exceptions pendente lite to the overruling of his demurrer to the petition; on exceptions pendente lite to the refusal to grant a mistrial because of alleged prejudicial remarks of counsel for plaintiffs in his argument to the jury; and on the overruling of the defendant's motion for a new trial.

█ In each case the petition as amended set out a cause of action, and was not subject to any ground of the demurrer interposed, and the court properly so held.

█ Exceptions pendente lite, and also the only special ground of the motions for a new trial, complain of the following alleged prejudicial remarks of counsel for plaintiffs: In commenting before the jury on the distance and speed of Hammond's car, "James S. Bussey, of counsel for defendant, said that Dr. Houston had taught him arithmetic at the Richmond Academy, and that if Keene Hammond's car was going at a rate of speed of 20 miles per hour, it was making 105,600 feet per hour, which divided by 3600 would make the car proceed at approximately 30 feet in one second; and therefore to cover the distance between his car and de-

fendant's car, viz. 10 feet, would require approximately one third of a second." W. Inman Curry, of counsel for plaintiffs, in his concluding argument to the jury, stated: "Dr. Houston was also my teacher at the Richmond Academy. He taught me reading, writing, and arithmetic, and he taught me no such arithmetic as my brother was talking about. He didn't teach me how to calculate the speed of an automobile in hundredths of seconds. My brother didn't get those figures from Dr. Houston. Whenever you hear a man talking about measuring speed of an automobile by hundredths of a second, those figures were not gotten up by Dr. Houston, but were gotten up by a good insurance man." Counsel for defendant insists that this was an effort to inject the insurance feature into the case, and was prejudicial to the defendant. There was no evidence that Dr. Houston had taught Mr. Bussey, of counsel for defendant, arithmetic at the Richmond Academy, and his argument in this respect was not based on the evidence; and it was in reply to this argument of counsel for the defendant that counsel for plaintiffs made the remarks of which complaint is made. In replying to the argument, counsel for plaintiffs made no charge that any insurance carrier was involved in the case, but simply stated that the figures were gotten up by a good insurance man. This statement could reasonably be construed as meaning merely that as the calculation of the speed of the automobile was somewhat intricate, it must have been made by an expert at figures. While it probably would have been best for counsel to have omitted making such statement, we can not hold that he had no right to reply as he did to the argument of counsel for the defendant, or that the remark in question prejudiced the jury against the defendant; and the refusal of the court to grant a mistrial was not harmful error.

■ As shown by the foregoing statement of facts and our ruling on the demurrers, the petitions charged gross negligence on the part of the defendant Houston; and the record discloses ample evidence to authorize the jury to find that the charge had been sustained. There was evidence to show that the place where the defendant stopped was a street where traffic was unusually heavy, and particularly so when school had just turned out, as in the instant case; that the defendant stopped suddenly, on a down-hill slant, in the middle of the street, without holding out his hand or

giving any other warning to those driving cars directly behind him, thus making it practically impossible for the operator of a car in close proximity to the rear of the defendant's car to avoid a collision; that as a result of this act of the defendant the driver of the car immediately behind the defendant, acting in an emergency created by the defendant, attempted to pass the defendant on the right side, and the plaintiff, who was entering the defendant's car, was caught between the two cars and injured; that in so stopping the defendant violated three sections of the Traffic Code of the City of Augusta, viz., one requiring him to extend his arm downward on the left side of the automobile before stopping the same; one prohibiting careless or heedless driving in disregard of the safety of others or in such a manner as to endanger person or property; and one requiring him to stop within six inches of the curb. There is no merit in the contention of the plaintiff in error that these ordinances are for the benefit of drivers to the rear of the car only, and that the petitions and the evidence failed to show that the defendant, in violating the ordinances, had breached any duty which he owed to the plaintiff. Approaching cars traveling towards the front of the defendant's car could be affected by a violation of these regulations, as well as a person entering a car as in the instant case. Defendant's car being stopped suddenly in the middle of the street might confuse the driver of such an approaching car, and a car passing it on the left from behind would necessarily be thrown directly in the path of any such approaching car. Moreover, section 8 of the ordinance provides that it is "to apprise pedestrians, approaching and following vehicles," and section 53 provides that it is to prevent danger to "any person or property."

There is no merit in the contention of the plaintiff in error that the injury was caused by the intervening negligence of Keene Hammond in trying to pass the defendant's car on the right side, there being evidence to authorize the jury to find that Hammond exercised good judgment under the existing circumstances. Defendant had created the emergency by stopping suddenly, and, without warning to those behind him, on a down-hill slant, in the middle of a street where traffic was usually heavy and particularly so at the hour when school had just turned out. Hammond testified that he was within about ten feet of the defendant's car and

going about twenty miles an hour; that when the defendant stopped his car, he (Hammond) saw by looking in his rear-vision mirror that the car immediately in his rear was passing him and the defendant on the left; that if he (Hammond) had attempted to pass the defendant on the left it would have caused a collision of three cars; that he therefore chose to pass defendant on the right with the hope that running into the curb on the right would help him to stop his car; that he did stop his car before he passed the defendant's car, though not until the injury to the plaintiff was inflicted. It is true that "if subsequently to the original wrongful act, a new cause intervened, sufficient of itself to stand as the cause of the injury, the former will be considered as too remote. But if the intervening cause and its probable consequences should reasonably have been anticipated by the original wrong-doer as a natural and probable result of the wrongful act, the causal connection between the wrongful act and the injury is not broken, and an action for resulting damages will lie against the original tort-feasor. A tortious act may have several consequences, concurrent or successive, for all of which the first tort-feasor is responsible; and a consequence of an original wrong may in turn become the cause of succeeding consequences, and should not be regarded as an efficient intervening cause which will excuse the original cause, so long as it appears that the injury is attributable to the original wrong as a result which reasonably might or ought to have been anticipated and foreseen." *Spires* v. *Goldberg*, 26 *Ga. App.* 530 (2, 3) (106 S. E. 585). See also *Bonner* v. *Standard Oil Co.*, 22 *Ga. App.* 532 (96 S. E. 572); *McAfee* v. *Martin*, 34 *Ga. App.* 247 (129 S. E. 168); *Letlon* v. *Kitchen*, 37 *Ga. App.* 111 (139 S. E. 155); *Chandler* v. *Brittain*, 48 *Ga. App.* 361 (172 S. E. 745); *Southern Ry. Co.* v. *Webb*, 116 *Ga.* 152 (42 S. E. 395, 59 L. R. A. 109).

The jury were authorized to find from the evidence that the minor plaintiff, by the exercise of ordinary care, could not have avoided the injury to himself. It is true that if the boy had stayed on the sidewalk he would not have been injured, but the question is not whether it were *possible* for him to have avoided the injury, but whether he could have avoided it by the exercise of ordinary care; and whether his negligence (if he were negligent) was equal to, or less, or greater than, the negligence of the defendant. The defendant had stopped suddenly and invited the

plaintiff to come and get in the car. Plaintiff naturally did not wish to detain one who was offering to accommodate him, and accordingly he ran towards the car. The jury, according to their verdict, determined that under such circumstances the young plaintiff could not be expected to know or anticipate that Keene Hammond could not pass to the left of the defendant's car without causing a collision of three cars, or that, in the emergency created by the defendant, Hammond would elect to drive to the right of the defendant's car instead of to the left. "Circumstances may exist under which forgetfulness or inattention to a known danger may be consistent with the exercise of ordinary care, as where the situation requires one to give undivided attention to other matters, or is such as to produce hurry or confusion, or where conditions arise suddenly which are calculated to divert one's attention momentarily from the danger." 45 C. J. 951, § 509. See, in this connection, Gunn v. United Rys. Co., 270 Mo. 517 (2) (193 S. W. 814); Chaney v. Moore, 101 W. Va. 621 (4, 5) (134 S. E. 204).

The questions as to the proximate cause of the injury; whether the defendant was guilty of gross negligence; whether Hammond's act was such an efficient intervening cause as to excuse the defendant's negligence; whether Ficken Taylor, by the exercise of ordinary care, could have avoided being injured; and whether his negligence (if he were negligent) was equal to, or less, or greater than, the defendant's negligence, were, under the pleadings and the evidence, questions for the determination of the jury; and the court in its charge so clearly, fairly, and fully instructed the jury upon all these issues that no assignment of error was made upon the charge. The verdicts were authorized by the evidence, and the refusal to grant new trials was not error.

*Judgment affirmed. MacIntyre, J., concurs. Guerry, J., dissents.*

Guerry, J., dissenting. The allegations of the petition are fully set forth in the majority opinion. The evidence was that the plaintiff, a schoolboy, was waiting with a companion, at the intersection of Walton Way and Hickman Road in the City of Augusta, in front of the Walton Apartments, to catch a street-car. On direct examination the plaintiff testified: "Dr. Houston's car came by and he called for us to get in and we went to get in and Dooley

got in first, and when I was stepping in, Keene Hammond's car came in between Dr. Houston's car and the curb and caught my leg. . . I saw Dr. Houston's car parked up there, but did not know it was his car until I saw him stop. I did not signal Dr. Houston to get in. . . I don't know whether Dooley signalled him for a ride or not. I was with Dooley and we were both standing up there, and I would not have seen Dooley signal for a ride unless I had been looking at him. I could have been there and Dooley could have signalled and I would not have seen him. . . Dooley was also trying to catch a ride, but I was trying to catch a street-car on this particular occasion. Dr. Houston stopped and waved to us, and we went up to his car and Dooley got in first. Dr. Houston took his hand off the steering wheel and waved." The uncontradicted evidence shows that Dr. Houston's car had been parked not more than sixty feet from where the injury occurred and the defendant had seen it parked there and Dr. Houston had just gotten in it and started it, and was not running more than ten miles an hour and had not gone more than fifty feet when he stopped to let the boys ride. The street at this point was amply wide "for any number of cars." It was in the winter and the windows of Dr. Houston's car were up. The defendant further testified: "It was the fault of Keene Hammond, who was driving the other car. I don't know how fast he was going. I saw him coming, but thought that he would stop before hitting me. In spite of the fact that I saw him coming, I went out into the street. I didn't see him until I was already out there, although there is nothing to obstruct my view. I don't remember whether I looked up Walton Way when I went out to get into Dr. Houston's car or not. I don't believe I could have looked and not seen Keene Hammond's car ten feet behind Dr. Houston's car. When he stopped I was standing on the curb and Dooley was. going out to the car. . . Dooley reached it first and got in the car and sat down on the rear seat and I was getting in the car. Julian Dooley had time to get from the sidewalk to the car, get in, and sit down before I was injured. I had one foot on the running board. Dr. Houston's car stopped suddenly and I was on the curb at the time. His car had been at a standstill just a few seconds when I left the curb. I don't remember whether there was any cars approaching or not. He [Dr. Houston's car] was about three or four feet from

the curb. When I went into the street I don't remember looking to see if there were any other cars upon the hill. I guess I could have seen Keene Hammond's car if I had looked, but I don't remember looking. I guess the reason I didn't see him when I left the sidewalk was because I did not look. I saw Keene Hammond's car while I was getting in the car and thought he was going to stop."

The plaintiff made the following signed statement about two days after the accident: "My·name is Ficken Taylor, age 16 years. On Monday, January 23, 1932, I got out of school about twelve and walked west on Walton Way, trying to catch a ride down town. Julian Dooley, who lives on the northwest corner of Fifth and Walker Streets was with me. He was also trying to catch a ride. . . We got as far as Walton Way Apartments, now known as the Inn. We saw Dr. Houston's car parked in front of the Walton Way Apartments, and he started. down town, and we signalled· him for a ride, and he slowed down and stopped slightly on the right center of the street, not leaving enough room for a car to get by on his right. He had not gone any distance from where he was parked until stopped, not over fifty feet, if that far. Dr. Houston came to a complete stop and Julian got in his car. I was in the act of getting in, had my right foot on the running board just preparatory to getting in, when I was struck by a car going east on Walton Way. This car hit me and broke my left leg between the knee and hip. In my judgment it was not Dr. Houston's fault. It was the fault of Keene Hammond, who was driving the other car. I don't know how fast he was going. I saw him coming, but thought he would stop before hitting me. Lib Murray, Elizabeth Murray, and I think someone, was in the back seat of his Ford Sedan. I don't know how far Dr. Houston's car was from the right-hand curb, but it didn't seem to me there was enough room for the Hammond car to pass. As soon as he hit my leg I hollered, and he stopped, he did not go through. Dr. Houston immediately brought me to the hospital."

The cardinal rule of construing pleadings is that they shall be construed most strongly against the pleader. The negligence alleged against the defendant is gross negligence, which is the absence of slight care and is, under the Georgia decisions, that negligence which allows a recovery by a gratuitous passenger against

the driver or owner of the car causing the injury. A reading of the petition shows that every act of negligence alleged against the defendant had already occurred before the plaintiff even started to become a gratuitous passenger in the defendant's car. The entire negligence alleged was the sudden stopping, without signalling, in the middle of the street, while the defendant was standing on the sidewalk or curb placed there for pedestrians. If there had been no suggestion of the relation of passenger and guest, and the defendant had suddenly stopped his·car in the middle of the street, he would have violated no duty towards the plaintiff, unless, as in the case of *Letton* v. *Kitchen,* 37 *Ga. App.* (supra), his car had forced the following car onto the sidewalk and caused the injury there. It is a fundamental principle of our law that where no duty is owed, there can be no negligence; that if a duty is violated, before answerable negligence flows therefrom, it must be a duty owing by the defendant to the person suffering the loss. "If there is no person upon whom the duty can operate, prescribed by the statute, of course no duty has been violated." *Huckabee* v. *Grace,* 48 *Ga. App.* 629 (173 S. E. 744). In 1 Sher. & Red. on Neg., § 8, it is said: "If there is no duty there can be no negligence. If the defendant owes a duty but does not owe it to the plaintiff, the action will not lie. . . It is not sufficient that there be a general duty to the public which is violated, but in all civil cases, the right to enforce such duty must reside in the individual injured, because of ,a duty due him by the injurer, or he can not recover." The statutes of the Traffic Code of the City of Augusta, which are pleaded as acts of negligence on the part of the defendant are not duties owed by the defendant to pedestrians on the sidewalk, except in special cases. The stopping in the middle of the street without giving the signal required, the stopping on the brow of the hill, the failure to park six inches from the curb, while violations of statutes, are violations of a duty owed only to drivers of other near-by automobiles and to pedestrians who may be passing along the street, and not violations of any duty owed to pedestrians on the sidewalk, except where the consequences of the act invade the pedestrian's right of way. However, where a pedestrian leaves the sidewalk and starts across the street, he may incidentally become such a user of the street as will give rise to a duty on the part of a person violating such statute. But when a driver of a car stops

in the middle of the street without giving a signal, but for the convenience of a pedestrian on the sidewalk who expects to become a passenger in such automobile, such action does not thereby create the breach of a duty owed to such pedestrian. If the pedestrian voluntarily leaves his place of safety, after such stopping of the defendant's car, he thereby voluntarily assumes any risk incident to the travel on the street. The defendant does not become guilty of negligence as to such pedestrian because his stopping has caused traffic to be diverted. As to such traffic, he may have violated a duty to those driving therein. The emergency created as to such a driver does not ipso facto become an emergency created as to the pedestrian. I am, therefore, of the opinion that the general demurrer should have been sustained.

However, in my opinion the evidence shows conclusively that the plaintiff could have avoided the results of the negligence of the defendant by the exercise of ordinary care. He was standing in a place of safety, and without looking to see what cars were coming, but, in absolute disregard for his safety, he ran into the street. He knew that the defendant had stopped his car and was chargeable with notice of any alleged emergency which had been created by the act of the defendant. The theory of the plaintiff, to support a recovery in this case, is that he was a gratuitous guest of the defendant, and in such circumstances the defendant owed to him only slight care. The court charged the jury: "I charge you as a matter of law that one does not become a passenger until he is in the automobile, and if you believe that at the time of the injury to Ficken Taylor he was not in Dr. Houston's automobile, then he would not be Dr. Houston's guest and Dr. Houston would not owe him the slight degree of care of a host and would not be liable in this suit." The alleged acts of negligence on the defendant's part had all occurred prior to the time of the injury, and before the defendant owed any duty at all to the plaintiff, until the relationship of passenger, guest, and passenger host had become established the defendant was under no legal duty to the plaintiff. The alleged negligent act of stopping had occurred before or at the same time of the invitation. The defendant had already stopped before the plaintiff left the curb or signified his intention, according to his own testimony, of acceptance of the invitation. The entire negligence alleged in the petition is embraced within the act of the defendant stopping his

automobile. No further or other negligence than this is alleged or shown. The defendant testified that Dooley, the companion of the plaintiff on this occasion, signalled frantically to be allowed to ride. The plaintiff himself, in his sworn evidence, does not negative this testimony, and in his signed statement, made two days after the occurrence, he said: "We signalled him for a ride, and he slowed down and stopped on the right center of the street, not leaving enough room for a car to get by on his right." If any duty at all may rest on a gratuitous passenger who is already riding in an automobile, where the movements of the machine are under the control of another person, it is all the more apparent that one who is intending to become such a passenger, and sees an alleged act of negligence which has already been committed before he attempts to become such a passenger, is certainly under a duty himself to exercise ordinary care in avoiding the consequences of such alleged negligent act. Even one who has already become a passenger can not close his eyes to an obvious or well-known danger, or entrust his safety absolutely to the driver. Huddy on Automobiles, § 824. See also Berry on Automobiles (4th ed.), § 575. The defendant stopped within three or four feet of the curb. The plaintiff's testimony shows that although the defendant was negligent, and that such negligence violated a duty owed to the plaintiff, he, by looking, could have avoided the result of the defendant's negligence. I think the evidence is insufficient to support the verdict.

#### ON MOTION FOR REHEARING.

MacIntyre, J., withdraws his specially concurring opinion, and concurs in the judgment of affirmance, but not in all that is said in the opinion. *Rehearing denied.*